EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Doña Antonia Rivera García<br><br>Peticionaria<br><br>v.<br><br>Lcda. Namyr I. Hernández Sánchez, Registradora de la Propiedad, Sección III de Bayamón<br><br>Recurrido | Recurso Gubernativo<br><br>2013 TSPR 107<br><br>189 DPR ____ |

Número del Caso: RG-2013-1


Fecha: 7 de octubre de 2013


Registradora de la Propiedad, Sección III Bayamón


Abogado de la Parte Peticionaria:

      Lcdo. Luis J. Marín Rodríguez


Abogado de la Parte Recurrida:

      Lcda. Namyr I. Hernández


Materia: Ley Número 195-2011 Ley de Hogar Seguro – Comparecencia de la comunidad hereditaria en Acta Notarial de hogar seguro sobre propiedad hereditaria

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Doña Antonia Rivera García

    Peticionaria

        v.

Lcda. Namyr I. Hernández
Sánchez, Registradora de
la Propiedad, Sección III
de Bayamón.

    Recurrido

|  |  |  |
|---|---|---|
| | RG-2013-0001 | Recurso Gubernativo |

Opinión del Tribunal emitida por la Jueza Asociada señora PABÓN CHARNECO.

En San Juan, Puerto Rico, a 7 de octubre de 2013.

Ante nos comparece la señora Antonia Rivera García (en adelante la peticionaria) y nos solicita que revoquemos una recalificación realizada por la Registradora de la Propiedad de la Sección III de Bayamón, Hon. Namyr Hernández Sánchez. En esta, la Registradora denegó la anotación del derecho a hogar seguro que solicitó la peticionaria al amparo de la Ley Núm. 195-2011, 31 L.P.R.A. secs. 1858-1858k.

Este caso nos provee la oportunidad de expresarnos por primera vez en cuanto a la naturaleza y alcance del derecho a hogar seguro que se reconoció en la Ley Núm. 195, *supra*. En específico, debemos determinar si para inscribir

el derecho que reconoce ese estatuto en una propiedad que es parte de una comunidad hereditaria es necesario que comparezcan a la autorización del Acta Notarial todos los cotitulares de esta.

Previo a resolver esta controversia, pasemos a exponer los hechos que le dieron génesis.

I

Los hechos de este caso son sencillos. La peticionaria es una residente del municipio de Bayamón y en el presente vive en lo que fue su hogar conyugal. Al fallecer su esposo Alberto Rodríguez Salas, la peticionaria pasó a ser dueña en común proindiviso de la mencionada propiedad junto a sus hijos, por ser estos los herederos de su fenecido esposo.

Así las cosas, el 2 de octubre de 2012 la peticionaria le requirió al Notario Público Luis J. Marín Rodríguez que autorizara un Acta Notarial para que se anotara en el Registro de la Propiedad su derecho a hogar seguro de acuerdo a la Ley Núm. 195, *supra*. El Acta Notarial procedió a autorizarse ese mismo día mediante la Escritura Número Dieciséis (16), titulada "Acta de edificación y Acta para Anotar Derecho a Hogar Seguro". Surge de los autos que el Notario Público le requirió a la peticionaria que compareciera a la autorización del Acta, lo cual hizo en carácter de requirente.

Autorizada el Acta, el 3 de octubre de 2012 se presentó la misma en la Sección III del Registro de la

Propiedad de Bayamón. Posteriormente, el 9 de noviembre de 2012 la Registradora de la Propiedad denegó la inscripción y notificó vía fax la falta siguiente:

> LA PROPIEDAD PERTENECE A UNA COMUNIDAD HEREDITARIA, POR LO QUE LOS CO-HEREDEROS [SIC] CO-TITULARES [SIC] DEBEN CONSENTIR A ESTA TRANSACCIÓN.

Insatisfecha, el 29 de noviembre de 2012 la peticionaria presentó a través de su representación legal un Escrito de Recalificación en el que argumentó que exigir la comparecencia de todos los cotitulares iría en contra del texto de la Ley Núm. 195, *supra*, y que sería muy oneroso anotar su derecho a hogar seguro para los titulares de propiedades bajo un régimen de comunidad de bienes. Además, adujo que por tratarse de un derecho *sui generis*, no había objeción alguna que pudieran anteponer los cotitulares.

Posteriormente, el 17 de enero de 2013 la Registradora de la Propiedad denegó el Escrito de Recalificación presentado por la peticionaria. La Registradora sostuvo que como la propiedad en cuestión era parte de una comunidad hereditaria, un cotitular no podía actuar sin el consentimiento expreso de los demás cotitulares. Además, la Registradora razonó que para anotar el derecho a hogar seguro al amparo de la Ley Núm. 195, *supra*, debe existir

> "el consentimiento expreso de los co-titulares [sic] a que éste derecho se anote a su favor y NO a favor de los [sic] todos los co-titulares [sic], puesto que éstos perderían el derecho de

solicitarlo en sus propiedades a tenor con el Art. 10 de la Ley".[1]

Aún inconforme, el 6 de febrero de 2013 la peticionaria presentó el Recurso Gubernativo de autos y alegó que la Registradora de la Propiedad cometió el error siguiente:

> ERRÓ LA REGISTRADORA AL NEGARSE A INSCRIBIR EL DERECHO A HOGAR SEGURO DE LA RECURRENTE, SO PRETEXTO DE NO HABER COMPARECIDO AL ACTA LOS COHEREDEROS, COTITULARES DE LA PROPIEDAD, EN CONTRAVENCIÓN A LO DISPUESTO EN LA LEY DE HOGAR SEGURO, Y LA LEY NOTARIAL Y SU REGLAMENTO.

Contando con la comparecencia de ambas partes, estamos en posición de resolver sin ulterior trámite.

II

A.

Es indudable que el derecho a la propiedad es de alto interés público en nuestro ordenamiento. De hecho, podría decirse que la génesis del concepto del Estado como el ente jurídico que conocemos hoy surge de teorías políticas que aspiraban a dar una máxima protección al derecho de los individuos a defender y disfrutar su propiedad. Véase R.A. Goldwin, *John Locke*, en *History of Political Philosophy*, (L. Strauss y J. Cropsey, eds.), 3ra ed., Chicago, Ed. The University of Chicago Press, 1987, págs. 486-488. Sin embargo, el concepto en sí mismo de lo que comprende el derecho a la propiedad ha variado con el paso del tiempo. Véase J.R. Vélez Torres, *Curso de Derecho*

---

[1] Ap. Alegato de la Parte Recurrida, pág. 14.

Civil: *Los Bienes, Los Derechos Reales*, T. II, Ed. Prog. Educ. Leg. Cont. U.I.P.R., San Juan, págs. 67-74.

La importancia del derecho a la propiedad en nuestro ordenamiento es de tal magnitud que una Sección específica de nuestra Constitución establece varias protecciones de este. Primero, el disfrute de la propiedad es uno de los pocos que nuestra Constitución explícitamente dispone como de carácter fundamental. Véase Art. II, Sec. 7, Const. P.R., L.P.R.A. Tomo 1, ed. 2008, pág. 296. Además, "ninguna persona será privada de su...propiedad sin debido proceso de ley". *Íd.* Por último, se establece constitucionalmente que "[l]as leyes determinarán un mínimo de propiedad y pertenencias no sujetas a embargo". *Íd.*

Este Tribunal también ha sido enfático en reconocer la primacía del derecho a la propiedad en Puerto Rico. Véase *Soc. Gananciales v. G. Padín Co. Inc.*, 117 D.P.R. 94 (1986). Sin embargo, también hemos determinado que el disfrute de la propiedad no representa un derecho absoluto, por lo que este está limitado por intereses sociales apremiantes y normas de convivencia social. Véase *López v. Autoridad de Energía Eléctrica*, 151 D.P.R. 701 (2000).

Amparados en estas disposiciones constitucionales, y ante la innegable primacía del derecho a la propiedad en nuestro ordenamiento jurídico, la Asamblea Legislativa ha actuado afirmativamente en varias ocasiones para proteger

el llamado derecho a hogar seguro. La primera legislación que reconoció este derecho se tituló "Ley para Definir el Hogar Seguro y para Extentarlo [sic] de una Venta Forzosa" y fue aprobada en 1903. Este estatuto protegía la cantidad de quinientos ($500) dólares que estarían exentos de embargo una vez se ejecutara una Sentencia contra la propiedad de un demandado. Véase *González v. Corte Municipal*, 54 D.P.R. 18 (1938). El estatuto fue derogado por la Ley Núm. 87 de 3 de mayo de 1936, estableciéndose que el derecho a hogar seguro de los ciudadanos se limitaba a la cantidad de mil quinientos dólares ($1,500). 31 L.P.R.A. sec. 1851. En el 2003, la Asamblea Legislativa enmendó ese estatuto para aumentar la protección de hogar seguro a quince mil dólares ($15,000).

Luego de la crisis económica que han experimentado gran parte de los países del mundo desde finales de la pasada década, la Asamblea Legislativa entendió necesario proveer una protección mayor a los propietarios que la cantidad provista por las últimas enmiendas a los estatutos que establecían el derecho a hogar seguro. Por esa razón, en el año 2011 la Asamblea Legislativa aprobó la Ley Núm. 195, *supra*.

A diferencia de otras jurisdicciones en Estados Unidos, hay una marcada tendencia de los puertorriqueños a ser propietarios de sus viviendas. De hecho, según la Exposición de Motivos de la Ley Núm. 195, *supra*, en Puerto Rico la tasa de adquisición de viviendas sobrepasa el

setenta por ciento (70%). Ello a diferencia de otros estados, en donde el porcentaje de adquisición no alcanza el cuarenta por ciento (40%).

Por ello, la Asamblea Legislativa entendió necesario extender una protección mayor al derecho a la propiedad en casos de cobro de deudas. Según la Exposición de Motivos de la Ley Núm. 195, *supra*, la Legislatura estimó que "para muchos puertorriqueños su hogar representa casi la totalidad de su patrimonio y lo único que pueden ofrecer a sus herederos". Así, la Rama Legislativa manifestó que entendía "conveniente aprobar una nueva legislación de vanguardia sobre hogar seguro que brinde una mayor protección al hogar o residencia principal de todos los domiciliados en Puerto Rico y sus respectivas familias".

Mediante la Ley Núm. 195, *supra*, la Asamblea Legislativa cambió marcadamente el enfoque del derecho a hogar seguro en nuestro ordenamiento. Como vimos, los estatutos anteriores que reconocieron la existencia de este derecho se enfocaban en darle un valor estrictamente monetario a la propiedad. Es por eso que por más de un siglo el derecho a hogar seguro en Puerto Rico se limitaba a establecer una cuantía de dinero que estaría exenta de ser embargada por los acreedores.

*A contrario sensu*, la Ley Núm. 195, *supra*, no se enfoca necesariamente en proteger una cantidad de dinero de embargo, sino que se diseñó con la intención de proteger la propiedad física de los titulares. Es decir,

al ser conscientes del valor patrimonial y sentimental que tiene el techo y el hogar para los propietarios en Puerto Rico, la Asamblea Legislativa decidió convertir el derecho a hogar seguro en un vehículo de protección específica en cuanto al disfrute físico del hogar.

Podemos comprobar este interés legislativo al dar una lectura a los Artículos 3 y 5 de la Ley Núm. 195, *supra*. El primero de estos establece que:

> Todo individuo o jefe de familia, domiciliado en Puerto Rico, tendrá derecho a poseer y disfrutar, en concepto de hogar seguro, una finca consistente en un predio de terreno y la estructura enclavada en el mismo, o una residencia bajo el régimen de la Ley de Condominios que le pertenezca o posea legalmente, y estuviere ocupado por éste o por su familia exclusivamente como residencia principal. 31 L.P.R.A. sec. 1858.

Vemos entonces claramente la intención legislativa de crear un derecho **individual** en cuanto al hogar seguro, pero limitándolo solamente a aquella propiedad que sea utilizada por el titular como su **residencia principal**.

Por otro lado, el Artículo 5 del estatuto delimita la extensión de la protección que establece el derecho a hogar seguro. Específicamente provee ese artículo lo siguiente:

> **Protección contra embargo, sentencia o ejecución**
>
> Este derecho protege a la propiedad de embargo, sentencia o ejecución ejercitada para el pago de todas las **deudas**, excepto las **deudas** reconocidas como excepciones en la sec. 1858a de este título. 31 L.P.R.A. sec. 1858b.

Como se puede apreciar, el derecho protege a la propiedad física de ser embargada o ejecutada como pago de

toda deuda. Al enfocarse en el concepto de deuda, la Asamblea Legislativa enmarcó el derecho en el escenario de los actores principales de nuestro Código Civil en los capítulos de contratos y obligaciones: el acreedor y el deudor.

Cabe mencionar también que, como se intima en el Artículo 5 de la Ley Núm. 195, *supra*, el derecho a hogar seguro no es absoluto y está sujeto a una serie de excepciones enumeradas en su Artículo 4. Estas son:

> (a) En todos los casos donde se obtenga una hipoteca, que grave la propiedad protegida.
> (b) En los casos de cobro de contribuciones estatales y federales.
> (c) En los casos donde se le deban pagos a contratistas para reparaciones de la propiedad protegida.
> (d) En los casos donde aplique el Código de Quiebras Federal, en cuyo caso aplicarán las disposiciones de dicho Código.
> (e) En todos los casos de préstamos, hipotecas, contratos refaccionarios y pagarés constituidos a favor de o asegurados y otorgados por la Puerto Rico *Production Credit Association, Small Business Administration,* la Autoridad para el financiamiento de la Vivienda de Puerto Rico, la Administración Federal de Hogares de Agricultores, la *Federal Home Administration* (FHA), la Administración de Veteranos de Estados Unidos y el Departamento de Desarrollo Económico y Comercio de Puerto Rico; y las entidades sucesoras de los antes mencionados, así como a favor de cualquier otra agencia o entidad estatal o federal que garantice préstamos hipotecarios que se aseguran y se venden en el mercado secundario. 31 L.P.R.A. sec. 1858a.

Finalmente, la importancia y fortaleza que la Asamblea Legislativa quiso proveer al derecho a hogar seguro queda consagrada al establecerse que este es un

derecho irrenunciable y que cualquier pacto en contrario se declarará nulo. *Íd.*[2]

B.

Visto el tipo de derecho que quiso consagrar la Asamblea Legislativa mediante la Ley Núm. 195, *supra*, pasemos a examinar la extensión y naturaleza del mismo.

Como veremos más adelante, existen dos (2) métodos principales mediante los cuales se puede reclamar el derecho a hogar seguro. Pero una vez un individuo designa una propiedad como su hogar seguro, el Artículo 9 de la Ley Núm. 195, *supra*, establece que "el Registrador de la Propiedad tendrá la obligación de anotar que tal propiedad fue así designada por su propietario". *Íd.*

Mediante esta disposición estatutaria, unido a las disposiciones que proveen para la protección del hogar de los individuos, podemos apreciar claramente la intención legislativa de crear un derecho individual que tiene acceso al Registro de la Propiedad en Puerto Rico. Es un

---

[2] Es importante mencionar que la Asamblea Legislativa decidió limitar el derecho a hogar seguro a solo una propiedad por individuo. La razón para ello es evidente, ya que el derecho a hogar seguro existe para proteger aquella propiedad que sea utilizada como residencia principal por los propietarios. Además, la Ley Núm. 195-2011, 31 L.P.R.A. sec. 1858 *et seq.*, estableció en su Artículo 10 una penalidad criminal para evitar que los propietarios inscriban el derecho a hogar seguro en más de una de sus propiedades. Esa disposición lee:

**Penalidad por Inscripción ilegal**

Incurrirá en delito grave de cuarto grado, toda persona que intente o logre inscribir en el Registro de la Propiedad la protección de hogar seguro en más de una finca de su propiedad o logre inscribir a favor de otra persona la protección de hogar seguro, a la que ésta no tuviere derecho. Además, en los casos donde la persona se encuentre culpable de tal delito, ésta no tendrá derecho a hogar seguro sobre ninguna de las propiedades objeto de su actuación ilegal. 31 L.P.R.A. sec. 1858g.

principio conocido en nuestro ordenamiento que el "elemento sustancial que abre la puerta de la inscripción es que el derecho produzca el efecto jurídico real". L.R. Rivera Rivera, *Derecho Registral Inmobiliario Puertorriqueño*, 2da ed., San Juan, Ed. Jurídica Editores, 2002, pág. 398. Es decir, tienen acceso al Registro aquellos derechos personales que trascienden al individuo e incidan en bienes reales. Véase *First Federal Savings v. Registrador*, 113 D.P.R. 857, 861 (1983). Comúnmente se denomina este tipo de derechos como aquellos *derechos personales con trascendencia real*. L.R. Rivera Rivera, *op. cit.*, pág. 399. Por ello, una vez se denomina que un derecho personal tiene efecto *erga omnes*, este tendrá acceso válido al Registro de la Propiedad. *Íd.*

Precisamente el derecho a hogar seguro reconocido en la Ley Núm. 195, *supra*, es uno personal con trascendencia real. Ciertamente, es el individuo titular de una propiedad el que puede reclamarlo. Una vez decida hacerlo y este tiene acceso al Registro de la Propiedad, el derecho a hogar seguro adquiere una dimensión real y una *erga omnes*.

Por un lado, el derecho surte un efecto real ya que va a la finca misma, la cual recibe una anotación marginal en el Registro de la Propiedad. Por otro, crea un efecto *erga omnes* ya que el derecho a hogar seguro remueve del tráfico comercial la propiedad protegida, quedando así fuera del alcance de los acreedores, con excepción de

aquellos dispuestos en el Artículo 4 de la Ley Núm. 195, *supra*. En cierto sentido, este derecho tiene el efecto de insular un bien específico del patrimonio de un deudor y removerlo del tráfico comercial en cuanto al cobro de ciertas deudas. A su vez, representa una limitación a lo dispuesto en el Art. 1811 del Código Civil en cuanto a que "[d]el cumplimiento de las obligaciones responde el deudor, con todos sus bienes presentes y futuros". 31 L.P.R.A. 5171.

III

Examinado el ámbito de extensión y la importancia del derecho a hogar seguro establecido en la Ley Núm. 195, *supra*, pasemos a analizar el proceso mediante el cual la protección contenida en el derecho a hogar seguro se constituye y cuáles son sus efectos registrales. Ello en aras de resolver la controversia específica que presenta el caso de autos.

El Artículo 9 de la Ley Núm. 195, *supra*, establece dos (2) formas en que los propietarios pueden reclamar su derecho a hogar seguro para con una de sus propiedades. Mediante la primera opción, los individuos pueden reclamar su derecho a hogar seguro en el mismo momento en que adquieran una propiedad. Para así hacerlo, basta con que el individuo lo haga constar en el título de adquisición. 31 L.P.R.A. sec. 1858f.

La segunda manera de reclamar el derecho a hogar seguro se refiere a aquellas instancias en que la finca ya

esté inscrita a nombre del titular en el Registro de la Propiedad. Específicamente, el estatuto dispone, en lo pertinente, lo siguiente:

> En los casos donde la finca estuviere ya inscrita a nombre de dicho individuo o jefe de familia, bastará que **el propietario o propietarios** de la finca otorgue(n) un acta ante notario público, donde se haga constar que la finca tiene carácter de hogar seguro, para que el Registrador de la Propiedad consigne tal carácter en nota marginal de la inscripción correspondiente. *Íd.* (Énfasis suplido).

Precisamente es esta disposición la que debemos interpretar en el caso de autos. Ello debido a que una vez un Acta Notarial en la que se reclama el derecho a hogar seguro es presentada en el Registro de la Propiedad, todos los principios registrales de nuestro ordenamiento se activan. Por ende, como todo negocio jurídico inscribible, en el procedimiento de calificación el Registrador "[a]demás de cerciorarse de que el documento cumple los requisitos formales, deberá determinar si los derechos son inscribibles". L.R. Rivera Rivera, *op. cit.*, pág. 284.

IV

En el caso de autos, no está en controversia que la propiedad que la peticionaria quiso proteger con su derecho a hogar seguro no es de su total dominio. La propiedad en la que ella reside consta inscrita en el Registro de la Propiedad a nombre de ella y sus tres (3) hijos, toda vez que la misma forma parte de una comunidad hereditaria. Como vimos, la peticionaria compareció individualmente a la autorización del Acta Notarial en la

que requirió que se anotara su derecho a hogar seguro. La Registradora de la Propiedad entendió que esa Acta Notarial no cumplió con los requisitos formales que establece la Ley Núm. 195, *supra*, ni con el derecho aplicable a la comunidad hereditaria.

Según discutido, el texto del Artículo 9 de la Ley Núm. 195, *supra*, establece que en casos como el de autos en que ya "la finca estuviere inscrita a nombre de dicho individuo o jefe de familia, bastará que **el propietario o propietarios** de la finca otorgue(n) un acta ante notario público...". 31 L.P.R.A. sec. 1858f. (Énfasis suplido). Vemos entonces que el propio texto de la Ley Núm. 195, *supra*, exige que cuando una propiedad tiene más de un titular registral, todos tienen que comparecer a la autorización del Acta Notarial en la que se reclama el derecho a hogar seguro.

No es para menos. Como hemos visto, el derecho a que reconoció la Asamblea Legislativa en la Ley Núm. 195, *supra*, es uno amplio y abarcador que tiene efectos de carácter real en cuanto a la propiedad. Se trata de un derecho que en cierto sentido remueve a la propiedad del tráfico jurídico cuando se trate del cobro exclusivamente de **deudas**. Un acto de esa naturaleza, que no es meramente un acto de administración, requiere la comparecencia de todos los titulares de la propiedad.

Además del texto de la Ley Núm. 195, *supra*, debemos recordar que aunque la comunidad hereditaria no está

regulada específicamente en el Código Civil, hemos resuelto que a esta le aplican "las disposiciones generales sobre comunidad de bienes que sean compatibles con el carácter universal de este tipo de comunidad". *Vega Montoya v. Registrador*, 179 D.P.R. 80, 88 (2010). Por eso el derecho de los titulares que están sujetos a una comunidad de bienes no es de tal extensión como el de un titular individual. A esos efectos, comenta el profesor Vélez Torres que

> [e]n lo relativo a los derechos de condómines sobre la cosa común, está presente la limitación que implica la presencia del derecho de cada comunero coexistiendo con el de los demás. De ahí que la extensión y efectividad del derecho de cada cual dependa, necesariamente, de la extensión y efectividad de los derechos de los demás. Hay una situación de dependencia y subordinación, pues allí donde empieza el derecho de un comunero termina el del otro. J.R. Vélez Torres, *op. cit.*, pág. 150.

La representación legal de la peticionaria nos argumenta que si interpretamos que la Ley Núm. 195, *supra*, requiere que comparezcan todos los titulares al Acta Notarial que reclama el derecho a hogar seguro en una propiedad sujeta al régimen de comunidad de bienes, ello haría más difícil lograr anotar ese derecho a favor de un titular individualmente. Aunque es más difícil no es imposible. En casos como este, en que no hay evidencia del consenso entre los comuneros para reconocer el derecho a hogar seguro de uno de ellos, siempre se puede acudir al tribunal con el propósito de que se reconozca el derecho a hogar seguro al amparo del Art. 3 de la Ley Núm. 195,

supra, y se ordene su anotación en el Registro de la Propiedad. Después de todo, somos un tribunal de jurisdicción general y podemos entender en cualquier acción que presente una controversia legítima. *Clases A, B y C v. PRTC*, 183 D.P.R. 666, 686 (2011); *Mun. Arecibo v. Mun. Quebradillas*, 161 D.P.R. 109, 114 (2004); *Junta Dir. Cond. Montebello v. Fernández*, 136 D.P.R. 223, 230 (1994).

Por todo lo anterior, nos parece que el texto de la Ley Núm. 195, *supra*, y el derecho de comunidad de bienes exigen que en casos de propiedades con más de un dueño, todos los propietarios comparezcan a la autorización del Acta Notarial que reclama la anotación del derecho a hogar seguro.

V

De acuerdo con los fundamentos expuestos anteriormente, procedemos a confirmar la determinación de la Registradora de la Propiedad de la Sección III de Bayamón la cual denegó la inscripción del derecho a hogar seguro de la peticionara reclamada en la Escritura Núm. 16 intitulada Acta de Edificación y Acta para Anotar Derecho a Hogar Seguro, la cual fue autorizada el 2 de octubre de 2012 en la ciudad de Bayamón ante el notario Luis J. Marín Rodríguez.

Se dictará Sentencia de conformidad.

Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Doña Antonia Rivera García

    Peticionaria

       v.

Lcda. Namyr I. Hernández
Sánchez, Registradora de
la Propiedad, Sección III
de Bayamón.

    Recurrido

RG-2013-0001

Recurso
Gubernativo

SENTENCIA

En San Juan, Puerto Rico, a 7 de octubre de 2013.

De acuerdo con los fundamentos expuestos anteriormente, procedemos a confirmar la determinación de la Registradora de la Propiedad de la Sección III de Bayamón la cual denegó la inscripción del derecho a hogar seguro de la peticionara reclamada en la Escritura Núm. 16 intitulada Acta de Edificación y Acta para Anotar Derecho a Hogar Seguro, la cual fue autorizada el 2 de octubre de 2012 en la ciudad de Bayamón ante el notario Luis J. Marín Rodríguez.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez concurre con la siguiente expresión:

"La Juez Asociada señora Rodríguez Rodríguez concurre con el resultado por entender que tanto la Ley Núm. 195 de 13 de septiembre de 2013, conocida como la Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar, como el derecho de comunidad de bienes exigen que para que se inscriba la anotación en el Registro de la Propiedad del derecho de hogar seguro en casos de propiedades con más de un dueño, se requiere que todos

los propietarios comparezcan a la autorización del Acta Notarial. Ahora bien, existen unas lagunas en la ley que requieren que la Asamblea Legislativa atienda. Con el requisito que hoy adopta el Tribunal, traslucen una serie de interrogantes. Por ejemplo: En el caso de una propiedad que le pertenece a una comunidad hereditaria y que no tiene anotada la protección de hogar seguro, ¿a quién protegería la anotación de la protección de hogar seguro?; ¿Sólo a la copropietaria con respecto a su participación independiente a la de la comunidad hereditaria, o a cada uno de los miembro de la comunidad hereditaria? De anotarse la protección de hogar seguro sólo a la copropietaria independiente de la comunidad hereditaria ¿se podría embargar la participación de un coheredero? De permitirse este embargo, ¿no se estaría incumpliendo con el propósito de la Ley? Éstas son sólo unas de las interrogantes que han quedado en el aire con la Opinión que emite el Tribunal. Exhorto a la Asamblea Legislativa a actuar prontamente para minimizar cualquier impacto negativo en la protección de hogar seguro".

El Juez Presidente señor Hernández Denton disiente con opinión escrita a la que se une la Jueza Asociada señora Fiol Matta.


                        Aida Ileana Oquendo Graulau
                        Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Doña Antonia Rivera García

      Peticionaria

       v.

                        RG-2013-001

Lcda. Namyr I. Hernández Sánchez,
Registradora de la Propiedad,
Sección III de Bayamón

  Recurrida

Opinión disidente emitida por el Juez Presidente señor HERNÁNDEZ DENTON a la cual se une la Juez Asociada señora FIOL MATTA.

San Juan, Puerto Rico, a 7 de octubre de 2013.

Disentimos de lo resuelto por una mayoría de este Tribunal por entender que en este caso la viuda tiene derecho a que se inscriba su derecho a hogar seguro sin que tengan que comparecer los hijos en el acta notarial. Somos del criterio que la Ley 195-2011 (31 L.P.R.A. secs. 1858-1858k) dispone que la protección de hogar seguro continuará sobre el cónyuge supérstite independientemente de que el derecho estuviera inscrito previamente. Esto permite que la inscripción pueda ser realizada por la viuda que permanece utilizando la propiedad conyugal como su residencia principal.

En cambio, el efecto de la decisión mayoritaria es que la madre perderá su derecho de hogar seguro si los hijos no desean utilizar la propiedad de la

comunidad hereditaria como su residencia principal o que los hijos perderán el derecho a hogar seguro sobre sus respectivas residencias principales para poder hacer valer el derecho a hogar seguro de su madre. De cualquier forma, alguien perderá ese derecho. Por tal razón, disentimos y, en su lugar, revocaríamos la recalificación hecha por la Registradora de la Propiedad y permitiríamos la inscripción del acta notarial según presentada.

I.

Los hechos de este caso no están en controversia. En síntesis, la Sra. Antonia Rivera García es la viuda del Sr. Alberto Rodríguez Salas. Tras el fallecimiento de este, la señora Rivera García se ha mantenido viviendo en lo que fue su hogar conyugal en Toa Alta. Además, esta pasó a ser codueña en común proindiviso de dicha propiedad junto a sus tres hijos.

El 2 de octubre de 2012, el Notario Luis J. Marín autorizó un acta notarial en la cual la señora Rivera García requiere que se anote en el Registro de la Propiedad su derecho a hogar seguro al amparo de la Ley Núm. 195-2011. Al día siguiente, se presentó el acta en el Registro de la Propiedad. No obstante, la Registradora de la Propiedad Lcda. Namyr I. Hernández Sánchez (Registradora) denegó la inscripción y notificó como falta que la propiedad pertenece a una comunidad hereditaria, por lo que los coherederos debían consentir a esa transacción.

Inconforme con esta determinación, la señora Rivera García presentó un Escrito de Recalificación en el que

argumentó que la falta señalada es contraria a lo dispuesto en la Ley Núm. 195-2011, que el Art. 9 de dicha ley permite que la comparecencia de uno de los cotitulares sea suficiente para solicitar el derecho a hogar seguro, que requerir la comparecencia de todos los cotitulares obstaculizaría el propósito de la ley de proteger el derecho de hogar seguro de la señora Rivera García y que por el tipo de derecho *sui generis* de que se trata no hay objeción que puedan anteponer el resto de los coherederos.

El 17 de enero de 2013, la Registradora notificó la denegación del Escrito de Recalificación. Adujo que para que la señora Rivera García reciba la protección de hogar seguro debe venir acompañada por el consentimiento expreso de los cotitulares a que este se anote a su favor aunque no se solicite la inscripción a nombre de todos los cotitulares, puesto que estos perderían el derecho de solicitarlo en sus propiedades a tenor con el Art. 10 del estatuto, 31 L.P.R.A. sec. 1858g.[3]

Aun inconforme, la señora Rivera García acudió ante nos mediante un recurso gubernativo. Señaló que erró la Registradora al denegar la inscripción del acta notarial

---

[3] Dicho artículo establece que

> [i]ncurrirá en delito grave de cuarto grado, toda persona que intente o logre inscribir en el Registro de la Propiedad la protección de hogar seguro en más de una finca de su propiedad o intente o logre inscribir a favor de otra persona la protección de hogar seguro, a la que ésta no tuviere derecho. Además, en los casos donde la persona se encuentre culpable de tal delito, ésta no tendrá derecho a hogar seguro sobre ninguna de las propiedades objeto de su actuación ilegal.

según presentada. Oportunamente, la Registradora presentó su escrito.

## II.

La controversia que debemos resolver es si la señora Rivera García, como viuda del señor Rodríguez Salas, puede presentar un acta notarial en el Registro de la Propiedad en la cual solo comparece ella. Para llegar a una conclusión, es primordial analizar el contenido de la Ley Núm. 195-2011, *supra*.

El derecho al disfrute de la propiedad está firmemente arraigado en nuestro ordenamiento jurídico. La Constitución exige que las leyes determinen un mínimo de propiedad y pertenencias no sujetas a embargo. Art. II, Sec. 7, Const. E.L.A., L.P.R.A., Tomo 1. En virtud de ese mandato expreso en nuestra Constitución, la Asamblea Legislativa ha desarrollado diversas leyes sobre el derecho a hogar seguro.

En sus orígenes, el derecho a hogar seguro protegía ciertas cantidades monetarias de embargo tras una sentencia o ejecución. A lo largo de los años, estas cantidades han ido aumentando de $500, cuando se aprobó la primera ley de 1903, hasta $15,000, tras una enmienda realizada en el 2003. Véase, Ley Núm. 116-2003 (2003 Leyes de Puerto Rico 492), Ley Núm. 87-1936 (1936 Leyes de Puerto Rico 461) y Ley de 12 de marzo de 1903 (1903 Leyes de Puerto Rico 107). Ahora bien, con la aprobación de la Ley Núm. 195-2011, *supra*, la Asamblea Legislativa entendió "conveniente aprobar una nueva legislación de vanguardia sobre hogar seguro que brinde una **mayor protección al hogar o residencia principal de todos los**

**domiciliados en Puerto Rico y sus respectivas familias**". (Énfasis suplido.) Exposición de Motivos, Ley Núm. 195-2011, *supra*. De hecho, señala con admiración el desarrollo del derecho a hogar seguro en estados como Florida y Texas donde se provee "una protección amplia para los hogares de sus residentes de procedimientos de embargos y ejecuciones judiciales. Tal protección ha ayudado a que dichos estados se hayan convertido en lugares deseables para vivir y para el establecimiento de cientos de miles de puertorriqueños, en particular jóvenes profesionales". Íd.

Explicó la Asamblea Legislativa que el derecho a hogar seguro se trata de

> un asunto medular para la estabilidad de la institución más básica de nuestra sociedad y para cada puertorriqueño que con grandes sacrificios ha adquirido una residencia. Debemos tener presente que para muchos puertorriqueños su hogar representa casi la totalidad de su patrimonio y lo único que pueden ofrecer a sus herederos. Así, la protección del hogar es de gran importancia para todos en Puerto Rico, desde el joven que con tanto anhelo compra su primera propiedad hasta el individuo retirado, que tanto luchó para mantener su propiedad. Íd.

Más aun, su propósito es "**que cada ciudadano propietario cuente con una protección básica ante el riesgo de ejecución de una sentencia en contra de su residencia**". (Énfasis suplido.) Íd. Así quedó plasmado en el Art. 2 de la ley: "[e]s política pública del Gobierno de Puerto Rico asegurar que **todo individuo o jefe de familia** domiciliado en Puerto Rico, goce de una protección que cobije la posesión y el disfrute de su residencia principal contra el riesgo de

ejecución de esa propiedad". (Énfasis suplido.) Art. 2, Ley Núm. 195-2011, *supra*.

Por ello, la nueva ley de hogar seguro cambió el enfoque monetario a una protección sobre la totalidad de la propiedad. Con esta intención de proteger la residencia principal de cada ciudadano, el legislador cumplió su propósito de una mayor protección del derecho de hogar seguro. En específico, el Art. 3 claramente dispone qué es el derecho a hogar seguro y quién es su acreedor. El mismo establece que

> [t]odo individuo o jefe de familia, domiciliado en Puerto Rico, tendrá derecho a poseer y disfrutar, en concepto de hogar seguro, una finca consistente en un predio de terreno y la estructura enclavada en el mismo, o una residencia bajo el régimen de la Ley de Condominios que le pertenezca o posea legalmente, y estuviere ocupado por éste o por su familia exclusivamente como residencia principal. 31 L.P.R.A. sec. 1858.

De ahí podemos colegir que toda persona es acreedora al derecho de hogar seguro si 1) le pertenece o posee legalmente una propiedad y 2) es su residencia principal. No obstante, toda persona tiene derecho a tener solamente un hogar seguro. Véase, 31 L.P.R.A. sec. 1858g. De lo contrario estaría sujeto a incurrir en delito. Íd.

Al ser acreedor del derecho a hogar seguro, una persona queda protegida de embargo, sentencia o ejecución ejercitada para el pago de todas sus deudas. 31 L.P.R.A. sec. 1858b. Asimismo, el estatuto establece que esta protección **"subsistirá después de la muerte de uno de los cónyuges a beneficio del cónyuge supérstite mientras éste continúe ocupando dicho hogar seguro,** y después de la muerte de ambos

cónyuges a beneficio de sus hijos hasta que el menor de éstos haya alcanzado la mayoría de edad". (Énfasis suplido.) 31 L.P.R.A. sec. 1858c. Es decir, la ley establece expresamente que el derecho de hogar seguro, en el caso de un matrimonio, opera automáticamente a favor del cónyuge que sobrevive, siempre que este se mantenga ocupando la propiedad como su residencia principal. O sea, este artículo de la ley está designado para proteger en primer lugar al cónyuge supérstite por encima incluso de los hijos.

Sobre el Art. 3 de la ley de hogar seguro del 1936, Ley Núm. 87-1936, *supra*, que disponía de la misma forma sobre el derecho del cónyuge supérstite,[4] este Tribunal expresó que este es uno de los casos en que por mandato del legislador la equidad se incorpora como parte del Derecho positivo. Cruz Cruz v. Irizarry Tirado, 107 D.P.R. 655, 660 (1978). Además, aclaramos que esto **no se ve afectado por tratarse de una propiedad de unos dueños en común proindiviso.** En López Rudón v López, 48 D.P.R. 324, 3-4 (1935), sostuvimos que

> [e]n cuanto a la posesión de la propiedad, se ha sostenido que no es necesario que sea exclusiva para que el condómine pueda constituir su homestead. Realmente no conocemos ninguna razón de peso que haga necesaria la posesión exclusiva… El

---

[4] El artículo disponía:

[l]a exención establecida en la sección anterior continuará subsistente después de la muerte del jefe de familia a beneficio del cónyuge supérstite mientras éste continúe ocupando dicho hogar seguro, y después de la muerte de ambos cónyuges a beneficio de sus hijos hasta que el menor de éstos haya llegado a la mayoridad. En casos de que el marido o la mujer abandonase su familia la exención continuará a favor del cónyuge que ocupe la finca como residencia; y en caso de divorcio el tribunal que lo conceda deberá disponer del hogar seguro según la equidad del caso. 31 L.P.R.A. ant. sec. 1853.

> derecho de homestead puede ser reconocido en favor de la viuda, sin lesionar los derechos de [otra codueña], quien conserva su condominio. (citas internas omitidas).[5]

Por otro lado, la Ley Núm. 195-2011, *supra*, provee para que este derecho se inscriba en el Registro de la Propiedad. En aquellas situaciones donde la finca estuviese inscrita pero el derecho a hogar seguro no, la ley dispone que

> bastará que **el propietario o propietarios** de la finca otorgue(n) un Acta ante Notario Público, donde se haga constar que la finca tiene carácter de hogar seguro, para que el Registrador de la Propiedad consigne tal carácter en nota marginal de la inscripción correspondiente.
>
> Ambos documentos, la escritura de adquisición y el Acta, según sea el caso, deben expresar el uso residencial de la propiedad, y que el propietario no ha designado como tal, ninguna otra propiedad en o fuera de Puerto Rico (Énfasis suplido.) Art. 9, *supra*.

Es decir, los documentos estarán redactados de acuerdo al propietario o propietarios que tengan allí su residencia principal. Nuevamente, la ley solo exige que la persona que desee inscribir su derecho de hogar seguro sea propietaria o

---

[5]Igualmente, si auscultamos en las jurisdicciones de Florida y Texas como lo hizo el legislador, podemos identificar que en esos estados tampoco es necesaria la inscripción en el Registro de la Propiedad, previo a la muerte del causante, para que el cónyuge supérstite reclame su derecho a hogar seguro. Véase con relación al estado de Florida: Fla. Stat. §196.031(1)(a) (2011); Fla. Stat. §732.401(5) (2011); City Nat. Bank of Florida v. Tescher, 578 So.2d 701 (Fla. 1991) (only the decedent's husband falls within the class which the constitution intended to protect, and only the husband was entitled to the protection of article X, section 4(c)). Véase además, sobre Texas: TEX. PROB. CODE ANN. § 283-284 (1956); Riley v. Riley, 972 S.W.2d 149 (Tex. App.—Texarkana 1998, no pet.)(The homestead right protects the survivors homestead from forced sale by creditors and from partition among the heirs and beneficiaries of the homestead claimant).

posea legalmente la propiedad y que esa sea su residencia principal.

Cabe resaltar que la ley no requiere que este derecho esté inscrito. Particularmente, el Art. 11 de la Ley Núm. 195-2011, *supra*, declara que

> [e]l hecho de que una finca no esté inscrita en el Registro de la Propiedad **o que el derecho a hogar seguro no esté inscrito o anotado en el Registro de la Propiedad, en nada afecta el derecho de hogar seguro que en ella tenga su propietario, siempre y cuando el derecho sea levantado oportunamente conforme a lo dispuesto en el Artículo 12 de esta Ley**. (Énfasis suplido.) 31 L.P.R.A. sec. 1858h.

Al respecto, el Art. 12 del estatuto, *supra*, provee el mecanismo para solicitar el derecho a hogar seguro mediante una moción presentada ante el tribunal dentro de un procedimiento de venta por sentencia o ejecución. Incluso, hemos reconocido que ni siquiera la propiedad tiene que estar inscrita a favor de la persona que reclama su derecho de hogar seguro. 31 L.P.R.A. sec. 1858i. En efecto, en Irizarry v. García, 58 D.P.R. 280, 284 (1941), cuando la ley no permitía la inscripción del derecho de hogar seguro mediante acta notarial, expresamos que el hecho de que la propiedad no se inscribiera a nombre de la sociedad de gananciales hasta una fecha posterior no destruye el derecho de hogar seguro que ya existía a favor del demandante.

III.

Expuesto lo anterior, podemos identificar que la Ley Núm. 195-2011, *supra*, provee expresamente que la protección

de hogar seguro del cónyuge supérstite opera de forma automática tras la muerte del otro cónyuge. Por ello, entendemos que la señora Rivera García tiene derecho a la protección de hogar seguro según lo dispuesto en el Art. 6, *supra*. Esto, independientemente de que el derecho a hogar seguro no estuviese inscrito previamente en el Registro de la Propiedad. Véase Art. 11, *supra*.

Además, sostenemos que esta podrá oponer su derecho contra sus acreedores de dos formas, mediante la inscripción en el Registro de la Propiedad o mediante la presentación oportuna de una moción ante el tribunal.[6] Por esto, entendemos que la viuda puede requerir a un notario que le autorice un acta notarial aunque la propiedad pertenezca a una comunidad hereditaria, pues esta es propietaria y utiliza la propiedad como su residencia principal. Además, reiteraríamos que el derecho de hogar seguro que dispone la Ley 195-2011, *supra*, a favor del cónyuge supérstite no puede ser afectado por el hecho de que la propiedad ahora pertenezca a varios dueños en común proindiviso. Véase, López Rudón v López, *supra*.

Por lo tanto, ningún comunero puede oponerse a que se inscriba el derecho de hogar seguro a favor del cónyuge supérstite que utiliza la propiedad como su residencia principal. Entonces, tampoco podríamos requerirle que

---

[6] En California también existe un derecho a hogar seguro dual, el cual se puede establecer automáticamente por ley o por declaración. Véase, Cal. Civ. Proc. Code § 704.720(a) (West 2008) y Cal. Civ. Proc. Code § 704.920 (West 2008). Véase además, In re Mulch, 182 B.R. 569, 573 (Bankr. N.D. Cal. 1995).

consientan a una transacción que no pueden objetar, según sugirió la Registradora. Menos aun podemos ordenar que se inscriba el derecho de hogar seguro a nombre de todos los comuneros, aun cuando estos no residan en la propiedad, como resuelve la mayoría de este Tribunal. Recordemos que residir en la propiedad es un requisito para ser acreedor del derecho de hogar seguro. En consecuencia, esto obliga al resto de los comuneros a decidir entre proteger la residencia de su pariente que sobrevivió o negarse a la inscripción para poder tener la protección de hogar seguro en su residencia principal. Es legítimo pensar que cada comunero preferirá tener su residencia principal protegida. Quizás, el efecto más claro del proceder mayoritario es que las propiedades que pertenezcan a comunidades hereditarias compuestas por un viudo o viuda e hijos mayores de edad no tendrán la protección de hogar seguro, pues nunca alcanzarán un consenso al respecto. Irónicamente, quien más pierde con este resultado sería la viuda, quien es la primera persona protegida en la ley y quien podría quedar desamparada si al menos uno de sus tres hijos se opone a inscribir la residencia en cuestión como hogar seguro.

En este sentido, la Opinión mayoritaria frustra el texto claro de la ley en varios aspectos al no reconocer el derecho a hogar seguro de la viuda aun cuando no estuviese inscrito. Más aun, deja a un lado la intención del legislador de dar una mayor protección a cada propietario "desde el joven que con tanto anhelo compra su primera propiedad hasta el individuo retirado, que tanto luchó para

mantener su propiedad". Exposición de Motivos, *supra*. Es evidente que el propósito de la ley es proteger el derecho de la viuda y que, a su vez, cada hijo tenga la oportunidad de tener su residencia principal protegida.

En virtud de lo anterior, es forzoso concluir que para hacer valer esta intención y el texto claro de la Ley 195-2011, *supra*, bastará con que la viuda, como copropietaria que utiliza la propiedad como su residencia principal, pueda comparecer ante el notario para requerir que se inscriba su derecho de hogar seguro. Por todo lo cual, no podemos avalar el proceder mayoritario, y permitiríamos la inscripción del acta notarial presentada por la señora Rivera García según presentada.

Federico Hernández Denton
Juez Presidente